UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

International Decision Systems, Inc.,          File No. 18-cv-02951 (ECT/DTS)

       Plaintiff,

v.                                        **OPINION AND ORDER**

JDR Solutions, Inc.,

       Defendant.

---

Peter H. Walsh and Matthew J. Piehl, Hogan Lovells US LLP, Minneapolis, MN; and Daniel D. Zegura, Rogers & Hardin LLP, Atlanta, GA, for plaintiff International Decision Systems, Inc.

A. Richard M. Blaiklock, Michael D. Heavilon, and Aaron Grant, Lewis Wagner, LLP, Indianapolis, IN; and Stanley E. Siegel and David J. Warden, Nilan Johnson Lewis PA, Minneapolis, MN, for defendant JDR Solutions, Inc.

---

       International Decision Systems and JDR Solutions entered into a contract effective February 1, 2007. In October 2018, International commenced this diversity case under Minnesota law alleging that—from the contract's inception and continuing to the present—JDR has failed to pay commissions and provide reports as required by the contract. International seeks over $3.2 million in damages and declaratory relief. JDR has moved to dismiss International's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) contending that Minnesota's six-year breach-of-contract statute of limitations bars International's claims. International's complaint establishes that some of International's claims are timely and that others accrued more than six years before International commenced this suit. As a result, JDR's motion to dismiss will be granted in

part. The dismissal will be without prejudice to International's right to seek leave to amend its complaint in accordance with the Pretrial Scheduling Order issued in this case and any amendments to that Order.

I[1]

International and JDR pursue overlapping business activities and are of diverse citizenship. International describes itself as "a global provider of asset finance origination and portfolio management software and related services." Compl. ¶ 2 [ECF No. 1]. International's customers include financial institutions and equipment manufacturers who use International's software and services "to automate the asset finance origination process, as well as manage the associated accounting, administration and compliance requirements of an asset finance portfolio." *Id.* International is incorporated under Delaware law and maintains its principal place of business in Minneapolis. *Id.* ¶ 3. According to International, "JDR resells certain [International] software and provides professional services to [International's] customers" under the contract at issue in this case. *Id.* ¶ 4. JDR is incorporated under Indiana law and maintains its principal place of business in Indianapolis. *Id.* ¶ 6.

International and JDR entered into a contract effective February 1, 2007. *Id.* ¶¶ 9–10. Though the contract has several parts and seems potentially complex, *see id.*, four of

---

[1] In describing the relevant facts and resolving this motion under Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in International's favor. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

the contract's terms provide the core legal basis for International's claims in this case, and these terms seem relatively straightforward. *First*, the contract authorizes JDR "to use and resell" International's software and "to provide specified services to [International's] customers." *Id.* ¶ 11. *Second*, the contract requires JDR "to pay [International] a monthly commission equal to twenty-five percent (25%) of the received charges" for services provided to International's customers. *Id.* ¶ 13. The payment of any commissions owed by JDR is "due on the first day of each month for the applicable charges received by [JDR] from the [International] Customer during the prior month." *Id.*[2] *Third*, the contract requires JDR to provide International with "a quarterly report no less than thirty days after the end of each quarter setting forth the amount of JDR's Professional Services sold, amounts collected and the amounts remitted to [International]." *Id.* ¶ 18. *Fourth*, the contract requires the Parties to "keep accounts and records in sufficient detail and containing such information as is necessary to enable fees due hereunder to be calculated" and provides each of them the right to audit the other's "accounts and records" subject to several conditions. *Id.* ¶ 20.

The factual basis for International's claims arises from its exercise of its contractual right to audit JDR's accounts and records. In April 2017, approximately ten years after entering into the contract, International notified JDR that it "wished to conduct an audit of JDR's accounting records to determine whether the monthly commissions mandated by

---

[2] The contract defines the word "Customer" to mean "a business entity or individual wherever situated which has an executed License Agreement for [International] software with [International]." Compl. ¶ 16.

3

[the contract] had been properly paid to [International]." *Id.* ¶ 21. "After JDR delayed the audit process for more than two months," International retained an accounting firm in June 2017 to conduct the audit. *Id.* ¶ 22. "After additional delays caused by JDR, the audit process finally began on September 8, 2017." *Id.* ¶ 23. International alleges that the audit process showed that "JDR had not sufficiently maintained" accounts and records "to allow for ready calculation of commissions owed," and that JDR's failure to maintain sufficient records "greatly increased the complexity and cost of [the] audit." *Id.* ¶ 24. International received a report of the audit from its retained accountants dated March 23, 2018. *Id.* ¶ 25. International's accountants determined that JDR had been paid at least $13,063,482 "through and including June 30, 2017," for services subject to the contract's 25% commission requirement, meaning "JDR therefore owes [International] commissions of at least $3,265,870" for services it provided to International's customers under the contract. *Id.* ¶¶ 26–27.

International asserts three claims in its complaint. It alleges that JDR breached the contract by failing to pay commissions, failing to maintain adequate accounts and records, and failing to provide quarterly commission reports. *Id.* ¶¶ 32–39 (Count I). It seeks a judgment under Minnesota's Uniform Declaratory Judgments Act, Minn. Stat. § 555.01 *et seq.*, declaring the Parties' rights and obligations under the contract. *Id.* ¶¶ 40–46 (Count II). Specifically, International seeks declarations that the contract is "valid and enforceable under Minnesota law," that JDR is obligated to pay commissions under the contract, and "that JDR breached its obligations under the [contract] by refusing to pay commissions." *Id.* ¶¶ 44–46. Finally, International alleges that JDR's failure to pay commissions breached

4

a duty of good faith and fair dealing implied in the contract under Minnesota law. *Id.* ¶¶ 47–50 (Count III).

JDR responded to International's complaint with a motion to dismiss under Rule 12(b)(6). ECF No. 15. JDR contends that, as pleaded, all of International's claims "accrued more than a decade ago" and that, as a result, the claims are barred by Minnesota's six-year breach-of-contract limitations period. Mem. in Supp. at 2 [ECF No. 17].

II[3]

A

"As this action is in federal court based on diversity of citizenship, state law governs substantive law issues." *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010) (citation omitted); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Parties agree that Minnesota law governs here. Though the basis for this understanding is not identified in International's complaint or the Parties' briefs, it can be found in a document that JDR filed as part of its motion to supplement the record with the audit report prepared by International's accountants. ECF No. 36. The audit report includes a copy of a part of the Parties' contract entitled "Attachment No. 1 to the Master Software License,

---

[3] The Parties agree that, as International's breach-of-contract claim goes, so go its claims for a declaratory judgment and breach of the implied duty of good faith and fair dealing. This understanding seems correct, at least insofar as the statute of limitations is concerned. *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 579 (Minn. 2012) ("[S]tatutes of limitations apply to a declaratory judgment action 'to the same extent' as a nondeclaratory proceeding based on the same cause of action."); *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000) (recognizing that a claim for breach of an implied covenant of good faith and fair dealing is subject to a six-year statute of limitations under Minn. Stat. § 541.05). Therefore, only the breach-of-contract claim is discussed in this opinion.

5

Value Added Reseller, Application Service Provider and Maintenance and Services Agreement." Mem. in Supp. of Mot. to Suppl. Ex. A [ECF No. 37 at 13–28]. And Paragraph 14.5 of that document provides:

> **Governing Law.** This Master Agreement shall be deemed to be made in the State of Minnesota and shall in all respects be interpreted, construed, and governed by and in accordance with the laws of the State of Minnesota, specifically excluding any conflict of law provisions. The parties expressly reject the application of the United National Convention on the International Sale of Goods to this Master Agreement.

*Id.* Sec. XIV ¶ 14.5. Based on this provision and the fact that the Parties agree Minnesota law governs, Minnesota law will be applied here. *See Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies . . . .").[4]

B

"As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting

---

[4] JDR's motion to supplement the record will be granted. International does not oppose the motion. *See* Resp. to Mot. to Suppl. at 1 [ECF No. 42]. Even if it did, it would be appropriate to grant the motion. When considering a motion to dismiss under Rule 12(b)(6), "the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (citation and internal quotation marks omitted). Here, the contract and the audit report provide the legal and factual basis for International's claims and are the subject of numerous allegations in the complaint.

6

*Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008)); *accord Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897–900 (8th Cir. 2015) (affirming the dismissal of a complaint as time-barred by a statute of limitations). In this situation, "the problem is not that the plaintiff merely has anticipated the defendant's answer and tried to negate a defense he believes his opponent will attempt to use against him; rather, the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1357 (3d ed. & Apr. 2019 Update).

To determine whether International's complaint is self-defeating based on a statute of limitations, it is necessary first to identify the applicable limitations period, the date International commenced this action for purposes of the statute of limitations, and the date or dates International's claims accrued. As with any motion under Rule 12(b)(6), all factual allegations in the complaint must be accepted as true, and all reasonable inferences drawn in International's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citations omitted). International's complaint survives if it reasonably may be understood to assert a claim for relief plausibly within the limitations period. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The limitations period and commencement date are not in dispute. Under Minnesota law, the statute of limitations for actions "upon a contract" is six years if "no other limitation is expressly prescribed." Minn. Stat. § 541.05, subd. 1(1). The Parties agree this six-year period applies here. Mem. in Supp. at 4; Mem. in Opp'n at 6 [ECF No. 20]. For purposes of the limitations period, this action was commenced upon service. *Larsen*

*v. Mayo Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980); Minn. R. Civ. P. 3.01). International served the complaint on October 22, 2018. Summons Returned Executed at 2 [ECF No. 6]. The question, then, is whether International alleges any claims that accrued on or after October 22, 2012.

Minnesota has clear rules governing the determination of an accrual date for a breach-of-contract claim. "Under Minnesota law, the cause of action for a contract-based claim 'accrue[s] at the time of the breach, even though actual damages occur later,'" *TCF Nat'l Bank v. Market Intelligence, Inc.*, 812 F.3d 701, 710 (8th Cir. 2016) (alteration in original) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000)), and even though "the aggrieved party is unaware of the facts constituting the breach," *Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1085 (D. Minn. 2017) (citing *Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n*, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001)). *See also Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011) (observing that accrual "does not depend on the ability to ascertain the exact amount of damages" (citations and internal quotation marks omitted)). "When a contract sets a date for payment, the statute of limitations begins to run on that date." *Botten v. Shorma*, 440 F.3d 979, 981 (8th Cir. 2006) (citing *Honn v. Nat'l Comput. Sys. Inc.*, 311 N.W.2d 1, 2 (Minn. 1981)). "Where a money obligation is payable in installments, the general rule is that a separate cause of action arises on each installment and the statute of limitations begins to run against each installment when it becomes due." *Honn*, 311 N.W.2d at 2 (citations omitted).

Applying these rules to International's complaint shows that International alleges claims accruing after October 22, 2012. International alleges that JDR failed to pay commissions "due on the first day of each month" and failed to "remit to [International] a quarterly report no less than thirty days after the end of each quarter." Compl. ¶¶ 13, 18, 35, 37. International alleges the contract requiring these monthly payments and quarterly reports had "an effective date of February 1, 2007," and that that these breaches occurred "through and including June 30, 2017." Compl. ¶¶ 9–10, 26. The plausible inference to be drawn from these allegations is that alleged breaches occurred throughout the term of the Parties' contract. *See Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1004 (D. Minn. 2018) ("The amended complaint does not specify the date of each call, but Aquilar alleges that the calls continued at least through December 15, 2015, which is well within the four-year limitations period preceding the filing of Aquilar's complaint." (citation omitted)). The audit report contains statements similar to those in the complaint. It says that JDR received revenue of roughly $21.7 million during "the period from February 1, 2007 (the inception of the Master Agreement) to June 30, 2017," and that "JDR has not paid any Professional Services commissions to [International] relating to this . . . revenue." Audit Report at 4 [ECF No. 37]. As with International's complaint, it is plausible to infer from the audit report that JDR received revenue upon which commissions were due but did not pay those commissions throughout the period examined in the audit, and part of that period is within the limitations period for this suit.

JDR advances essentially two arguments in an effort to demonstrate that International's claims are nonetheless entirely untimely. JDR first argues that

9

International's breach-of-contract claim for commissions owed accrued in March 2007, which JDR says is "the first day following the first month for the applicable charges received by JDR during the prior month," and that International's breach-of-contract claim for quarterly reports accrued April 30, 2007, which JDR says is "thirty days after the end of JDR's first quarter in which it could have provided Professional Services." Mem. in Supp. at 5. In other words, JDR contends that International's claims all accrued on the date of the first possible alleged breach. This is inconsistent with International's allegations and Minnesota law. International does not allege a single breach occurring at the first opportunity following the contract's effective date. International alleges breaches throughout the term of the contract—some of which no doubt occurred before October 22, 2012, and others after. By contrast, International's complaint alleges no facts showing that JDR's first alleged breaches represented a repudiation or a single interpretation of the contract from which all other breaches necessarily flowed. And because the Parties' contract establishes recurring monthly and quarterly deadlines for commission payments and reports, Minnesota law says as a general rule that a separate claim arises with each missed payment or report and that the statute of limitations accrues with respect to each claim on the date of each breach. *See Botten*, 440 F.3d at 981; *Honn*, 311 N.W.2d at 2.[5]

---

[5] It is true that the contract was not an "installment contract" as described in *Honn* because there was no fixed payment to be made over time. JDR's contractual obligation depended on its receipt of revenue subject to the commission requirement, and each payment would have required a separate calculation. The contract nonetheless is sufficiently analogous to an installment contract to justify applying here the tolling rules Minnesota has applied to installment contracts. *See RDO Foods Co. v. United Brands Int'l, Inc.*, 194 F. Supp. 2d 962, 971 (D.N.D. 2002) (citation omitted).

JDR next argues that International's complaint should be dismissed because it "makes no effort to differentiate between breaches that occurred prior to [the limitations period] and any that may have occurred afterwards." Mem. in Supp. at 6. "As a result," JDR contends, International's breach-of-contract claim "should be dismissed in its entirety based on Minnesota's six-year statute of limitations." *Id.*; *see also* Reply Mem. at 9–10 [ECF No. 23]. No authority is cited supporting the proposition that a breach-of-contract plaintiff must identify particular dates of alleged breaches or attribute alleged breaches to particular periods. Requiring that level of particularity—both generally and here—would seem inconsistent with Rule 8(a)(2), which requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal courts outside the Eighth Circuit persuasively have reached this same conclusion. *See, e.g.*, *Ctr. for Individual Rights v. Chevaldina*, No. 16-20905-Civ-KING/TORRES, 2017 WL 2959077, at *3 (S.D. Fla. Jul. 11, 2017) (finding no merit to argument that a complaint must specify the date of breach to comply with Rule 8); *Baisden v. I'm Ready Prods., Inc.*, Civil Action No. H-08-0451, 2008 WL 2118170, at *7 (S.D. Tex. May 16, 2008) ("Plaintiff's complaint does not contain—nor does Rule 8(a)(2) require it to contain—allegations as to the specific dates on which the breach of contract claim accrued."); *Nat'l Util. Serv., Inc. v. Xanser Corp.*, No. 3:03-CV-0878-P, 2003 WL 22939107, at *4 (N.D. Tex. Dec. 1, 2003) ("With respect to Defendants' statute of limitations defense, the Complaint does not contain (nor does Rule 8(a)(2) require it to contain) allegations as to the specific dates on which the two breach of contract claims accrued."); *see also Branch Banking & Tr. Co. v. Boone*, No. 8:10-cv-1424-T-24-TBM, 2010 WL 3834050, at *2 (M.D. Fla. Sept. 28, 2010) ("As pled,

11

these affirmative defenses provide [plaintiff] sufficient notice of the defendants' intention to seek a set-off, and the defendants need not allege, for example, on what specific dates payments were made to [plaintiff]."). International's failure to differentiate specifically in its complaint breaches it alleges occurred after October 22, 2012, from those it alleges occurred before, or otherwise to provide greater particularity with respect to the timing of the alleged breaches, does not justify dismissal.

C

In an effort to obtain dismissal of a portion of International's claims, JDR argues that, at the very least, International's breach-of-contract claim should be dismissed to the extent it seeks recovery for breaches alleged to have occurred before October 22, 2012. Mem. in Supp. at 6. International disagrees, contending that it "alleges facts that may support equitable tolling of the statute of limitations." Mem. in Opp'n at 7. "Minnesota law recognizes only one general equitable tolling exception, which arises when the plaintiff can demonstrate that the defendant engaged in fraudulent concealment." *Lamere v. St. Jude Med., Inc.*, 827 N.W.2d 782, 788 (Minn. Ct. App. 2013) (citing *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 51–52 (Minn. 1982)); *see also JJ Holand Ltd. v. Fredrikson & Byron, P.A.*, No. 12-cv-3064 (ADM/TNL), 2013 WL 3716948, at *5 (D. Minn. July 12, 2013) (citing *Lamere*, 827 N.W.2d at 788). Fraudulent concealment has been described as "a somewhat amorphous doctrine." *JJ Holand*, 2013 WL 3716948, at *5 (citing *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975)). Regardless, courts have identified some reasonably clear principles:

> To establish fraudulent concealment, a plaintiff must prove there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered by reasonable diligence.

*Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992) (citations omitted); *see also Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 887 (D. Minn. 2011) ("Fraudulent concealment requires that 'the concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'" (quoting *Wild*, 234 N.W.2d at 795)). "Additionally, . . . allegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity" under Rule 9(b). *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (citations omitted); *see also JJ Holand*, 2013 WL 3716948, at *5 ("Because fraudulent concealment invokes fraud, the heightened pleading requirements of Rule 9 apply." (citations omitted)).

International's complaint does not plead fraudulent concealment in compliance with these requirements. The complaint says nothing explicit about the statute-of-limitations issue. It does not invoke fraudulent concealment or equitable tolling by name, and it does not say anything to reasonably imply International's reliance on fraudulent concealment. The complaint identifies no facts to establish an affirmative act or statement by JDR intended to prevent discovery of a potential cause of action. It does not identify facts tending to show that alleged breaches could not have been discovered with reasonable

13

diligence. The absence of these allegations necessarily means the complaint does not satisfy the particularity required to plead fraudulent concealment.

International suggests that JDR's alleged failure "to provide [International] with required commission reports that would have detailed the amount of Professional Services sold and the amounts collected" kept International from knowing whether JDR owed commissions. Mem. in Opp'n at 7 (citing Compl. ¶¶ 18–19). This allegation does not establish fraudulent concealment. According to International, the contract required JDR to provide these reports on a quarterly basis. In other words, JDR's alleged failure to provide the reports itself establishes—and does not conceal—a breach of the contract.[6] Alternatively, International argues that JDR "frustrated [International's] attempts to audit [JDR's] accounting records, thereby delaying [International's] discovery of [JDR's] breach," and that as a result "the Complaint sufficiently alleges a basis for equitable tolling beginning April 11, 2017." Mem. in Opp'n at 8–9 (citing Compl. ¶¶ 21–24). In two places, the complaint alleges that JDR "delayed" the audit process, first by "more than two months," Compl. ¶ 22, and then for an unspecified "additional" time, *id.* ¶ 23. Two assertions of "delays" unsupported by facts alleging, for example, why the delay was attributable to JDR, what JDR did to cause the delay, or by what period of time JDR

---

[6] It is difficult to understand how an act that is alleged to breach a contract can at the same time fraudulently conceal a breach. Even if that could happen, as a practical matter, the presence of a breach—especially if it were obvious—ordinarily would trigger diligent investigation by the affected party. Here, as noted, the complaint includes no particular allegations establishing that International acted with due diligence in response to JDR's alleged failure to provide reports, at least not until International exercised its audit rights under the contract in April 2017. *See* Compl. ¶¶ 21–26.

extended the audit process provide no basis to toll the limitations period. International cites no authority to support its contention that the limitations period should be tolled effective April 11, 2017, the day it "gave notice to JDR" that it wished to exercise its audit rights. Compl. ¶ 21.

**ORDER**

Based upon all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [ECF No. 15] is **GRANTED IN PART** and **DENIED IN PART**.

    a. With respect to claims accruing prior to October 22, 2012, the Motion to Dismiss is **GRANTED** without prejudice to Plaintiff's right to seek leave to amend its complaint in accordance with the Pretrial Scheduling Order issued in this case [ECF No. 31] and any amendments to that Order.

    b. With respect to claims accruing on or after October 22, 2012, the Motion to Dismiss is **DENIED**.

2. Defendant's Motion to Supplement the Record [ECF No. 36] is **GRANTED**.

Dated: May 7, 2019   s/ Eric C. Tostrud
                     Eric C. Tostrud
                     United States District Court

15